## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

LUZ MINERVA TORRES ROLDAN,

Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

Defendant.

CIVIL NO. 19-1625 (CVR)

## OPINION AND ORDER

## INTRODUCTION

On June 28, 2019, Plaintiff Luz Minerva Torres Roldán ("Plaintiff") filed the present case challenging the denial of her petition for Social Security disability benefits by Defendant Andrew Saul, Commissioner of Social Security ("Commissioner" or "Defendant"). (Docket No. 1).[1]  Plaintiff then consented to proceed before a Magistrate Judge and the presiding District Judge referred this case to the undersigned for all further proceedings, including the entry of judgment. (Docket Nos. 3 and 6).[2]  On October 30, 2019, the Commissioner answered the Complaint and thereafter filed a copy of the administrative record. (Docket Nos. 10 and 13).  On April 29, 2020, Plaintiff filed her memorandum of law (Docket No. 20) and on June 5, 2020, the Commissioner filed his memorandum of law. (Docket No. 22).

---

[1] 42 U.S.C. Sec. 405(g), provides for judicial review of the final decision of the Commissioner.  "... [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing".  Section 205(g).

[2] The government has provided a general consent to proceed before a Magistrate Judge in all Social Security cases.  28 U.S.C. section 636(b)(1)(A), (c)(1) and (c)(2); Fed. R. Civ. P. 73(a).

<u>Luz Minerva Torres Roldán v. Andrew Saul</u>
Opinion and Order
Civil No. 19-1625 (CVR)
Page No. 2

After careful review of the entire record, the Court AFFIRMS the Commissioner's decision.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff, a former accounts payable clerk, auditor and accountant, filed an application for disability benefits with an alleged onset date of disability of April 30, 2015. The application was initially denied, as was the reconsideration.   (Tr. pp. 69-72 and 73-75).   Plaintiff then requested an administrative hearing before an Administrative Law Judge ("ALJ") which was held on May 22, 2018.   Plaintiff was present with counsel and testified regarding her claims.   (Tr. pp. 43-68).   Testimony was also heard from a Vocational Expert ("VE") regarding the kinds of jobs that Plaintiff could perform despite her ailments.   <u>Id</u>.   The ALJ found that there was insufficient information about Plaintiff's mental condition and how it affected her other physical limitations.   Thus, the ALJ arranged for Plaintiff to be seen by a consulting physician before rendering her decision.[3]

On December 5, 2018, the ALJ issued an opinion finding Plaintiff was not disabled from the onset date through her last insured date.   (Tr. pp. 24-35). As part of the ALJ's fact-finding responsibilities, she made the following findings of fact in this case:

1.      Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020.

---

[3] On June 28, 2018, consulting physician Dr. Pedro González Vega ("Dr. González") evaluated Plaintiff. (Tr. pp. 217-225).

2.      Plaintiff did not engage in any substantial gainful activity since the alleged onset date of April 30, 2015.

3.      Through the date last insured, Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome, disorders of the spine and obesity.

4.      Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1.

5.      Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), except: she could lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, she could sit for six hours and stand or walk no more than four hours each. She could also push or pull as much as she could lift or carry.   She could frequently: reach overhead and in all others bilaterally; handle, finger and feel bilaterally; and balance and occasionally stoop, kneel, crouch, crawl and climb ramps and stairs, but could never climb ladders, ropes or scaffolds.   She could tolerate occasional exposure to working at unprotected heights or with moving mechanical parts.   Lastly, she could only occasionally operate a motor vehicle in the work setting.

6.      Plaintiff was capable of performing past relevant work as an accounts payable clerk, auditor and accountant.   This work did not require the performance of work-related activities precluded by Plaintiff's RFC.

8.     Plaintiff was not under a disability, as defined in the Social Security Act, from April 30, 2015 through the date of the decision.

The Appeals Council subsequently denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner which is subject to review by this Court. (Tr. pp. 1-4).

Plaintiff objects the ALJ's final decision denying her disability benefits alleging only that the ALJ failed to properly evaluate her mental condition when she found it was not severe in nature.[4]   The Commissioner disagrees.[5]

## STANDARD

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act.   See Bowen v. Yuckert, 482 U.S. 137, 146-47, 107 S.Ct. 2287, 2294 (1987).   It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).   A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do

---

[4] Plaintiff only challenged the ALJ's conclusion about her mental condition.   As such, the Court does not disturb the ALJ's findings regarding her physical ailments. However, even if the Court were to find that Plaintiff's mental condition was severe, she would still have to prove this condition by itself was sufficiently incapacitating to render her disabled without any consideration of her physical RFC.

[5] The Court must mention some uncharacteristic mistakes found in the Commissioner's brief which included the following, for example: erroneous page citations (p. 2, the hearing); stating that ALJ Anavitarte presided over the hearing when she only wrote the opinion (p. 2); referring to Plaintiff as "he" instead of "she" (pp. 1 and 5); and stating that the ALJ found Plaintiff could not return to her past work at step four when the opposite finding was in fact made (p. 5). This is uncommon for the Commissioner and the Court expects more attention to detail in the future.

his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, a five-step sequential evaluation process must be applied in making a final determination.   20 C.F.R. § 404.1520; see Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).   At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity."   If he/she is, disability benefits are denied.   § 404.1520(b).   If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a medically severe impairment or combination of impairments.   See § 404.1520(c).   If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. § 404.1520(d); 20 C.F.R. pt. 404, Subpt. P, App. 1.   If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.   If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment

prevents the claimant from performing the work he/she has performed in the past.   If the claimant is able to perform his/her previous work, he/she is not disabled. § 404.1520(e).   Through each of these steps, the burden remains on the claimant to establish and evidence her disability.

Once the ALJ determines that the claimant cannot perform his or her former kind of work, in the fifth and final step of the process, the burden shifts to the Commissioner, and demands a determination of whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience.   The claimant would be entitled to disability benefits only if he/she is not able to perform any other work whatsoever. § 404.1520(f).

In the case at bar, the ALJ determined at step two that Plaintiff had several severe physical impairments, but no mental impairment, and at step three, that those impairments were not equivalent to any listed impairment.   The ALJ then found at step four that Plaintiff could perform at least one of her previous jobs as an accounts payable clerk, auditor and/or an accountant, and concluded Plaintiff was not disabled.

## LEGAL ANALYSIS

The Court is authorized under 42 U.S.C. § 405(g) to review the pleadings submitted by the parties and the administrative record and enter a judgment either affirming, modifying, or reversing the final decision of the Commissioner.   That review is limited, however, "to determining whether the [ALJ] used the proper legal standards and found facts [based] upon the proper quantum of evidence."   Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).   The Court must defer to the ALJ's findings of fact, as long

as those findings are supported by substantial evidence.   Id.   Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."   Irlanda Ortíz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).   In other words, in order to succeed, a claimant would have to establish that no other reasonable fact finder would examine the evidence and conclude as the ALJ did.   If the findings and conclusions are reached by "ignoring evidence, misapplying the law, or judging matters entrusted to experts," however, then they are not conclusive and must be reversed.   Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

It is important to note that "the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."   Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018), Nguyen, 172 F.3d at 31.   Thus, this Court will set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error.   Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

Plaintiff only challenges the ALJ's conclusions about her mental ailment arguing the ALJ erred at step two when she found her mental condition was not severe.   Plaintiff argues that the ALJ failed to consider certain evidence and, thus, the conclusion about her mental condition was not based on substantial evidence.

The Commissioner contends Plaintiff was unable to show that her mental condition had more than a minimal effect on her ability to work, which in turn resulted in no more than "mild" limitation in any of the functional areas of the paragraph B criteria at step two.   He further avers that her condition did not last for a continuous period of at least 12 months as required under 20 C.F.R. §§ 416.905(a), 416.920(c) and Social Security Regulation 85-28.   As such, there was substantial evidence in the record to uphold the ALJ's conclusion that Plaintiff's mental condition was not severe.

Plaintiff's covered period ran from the alleged onset date of April 30, 2015 through December 31, 2020.   Therefore, Plaintiff had to establish that she became disabled between those two dates.   Plaintiff's mental condition developed after she had already applied for benefits and there was little record evidence, besides her few visits to her treating psychiatrist and one brief hospitalization, to buttress her allegations of an incapacitating mental condition.   For this reason, during the hearing the ALJ ordered an evaluation of Plaintiff by consulting physician Dr. González which occurred on June 2018. Therefore, the totality of the relevant evidence available for the ALJ to determine the degree of Plaintiff's mental impairment was Plaintiff's record with treating physician Dr. Edelmiro Rodríguez ("Dr. Rodríguez"), her admission record at Hospital San Juan Capestrano and the examination report tendered by Dr. González.

In evaluating a Plaintiff's medically determinable mental impairment at step two and subsequent RFC, the ALJ must evaluate Plaintiff's degree of functional limitation by looking at four functional areas, the so called "paragraph B" criteria.   20 C.F.R. § 404.15020a(b)(2) and §404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.

These are: 1) understanding, remembering or applying information; 2) interacting with others; 3) concentration, persistence and maintaining pace; and 4) adapting or managing oneself.   If the degree of limitation in each of the first three areas is deemed mild and there are no episodes of decompensation in the fourth area, the ALJ will conclude that the claimant's mental impairment is not severe.   See 20 C.F.R. § 404.1520a(d)(1).

In the instant case, the ALJ determined at step two that Plaintiff's mental impairment was not severe because she found Plaintiff had mild limitations in each of the first three areas and only one episode of decompensation in May 2018 which lasted less than one (1) week.   These findings are buttressed by the record.

Periodic visits to treating psychiatrist Dr. Rodríguez during 2018 found Plaintiff cooperative, with appropriate hygiene, with coherent and spontaneous speech, with coherent and logical thought processes, oriented in time, place and person, with good recent and remote memory, and good judgment and insight. (Tr. pp. 654-659).   An appointment with Dr. Rodríguez on April 2018 (pre-hospitalization) found an essentially normal exam.   Plaintiff was sad, but had coherent and spontaneous speech, was oriented in three spheres, and had good short, recent and past memory, although she was somewhat forgetful.   (Tr. p. 658).

Plaintiff's stay at San Juan Capestrano on May 2018 was brief.   She was admitted with depression, harmful ideas and low self-esteem.   (Tr. pp. 209-216).   She was released six (6) days later, after which she was immediately seen by Dr. Rodríguez.   At that time, Plaintiff stated she was "feeling better from depression and felt more motivated" and was found to be coherent and relevant.   (Tr. p. 655).   Aside from a

depressed mood and sad affect, Plaintiff's subsequent mental status examinations during this period (which were immediately post-hospitalization) were unremarkable.

After the ALJ's referral, on June 28, 2018, Plaintiff was evaluated by consulting psychiatrist Dr. González. (Tr. p. 682).   Dr. González noted that Plaintiff was clean and appropriately dressed and was cooperative, coherent and had normal speech.   (Tr. p. 686).   She denied hallucinations, delusions or paranoia, and was oriented in time, place, person and circumstance.   (Id.).   Her mood was euthymic; her affect was appropriate and consistent with said mood; she had good eye contact; and her thought processes were relevant, logical, and coherent, as was her psychomotor activity. (Id.)

Dr. González determined that Plaintiff's depression was in partial remission and assigned her a global assessment of functioning (GAF) score of 70.[6] (Tr. p. 689). Dr. González found that Plaintiff was able to perform basic daily activities like preparing food, perform self-hygiene functions and take medications on her own, but had some difficulty due to her physical conditions.   (Tr. p. 690).   He noted that Plaintiff struggled on tasks that demanded moderate to high memory levels, concentration and physical activity, and that her depressive symptoms appeared to be related to her physical conditions and limitations and the loss of her job.   (Id.).   Dr. González gave Plaintiff a fair prognosis and found she was able to handle funds.   As is widely known, state agency consultants

---

[6] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, *e.g.,* how well or adaptively one is meeting various problems-in-living. The score is often given as a range.   Although Dr. González gave a GAF rating in his evaluation in this case, since 2013 the GAF is no longer used in the DSM-5.   A GAF score of 61-70 shows some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships.   These mild symptoms do not preclude a claimant from performing all gainful activity.

are highly qualified medical personnel who are experts in the evaluation of the medical issues involved in disability claims and whose conclusions are to be afforded great weight if they are supported by other evidence in the record, as was the case here.   20 C.F.R. § 404.1527(e)(2)(i).

Taken together, this record provides substantial support for the ALJ's conclusion that Plaintiff's paragraph B limitations at step two were no more than mild.   As a result of this, she concluded that Plaintiff's mental impairments were not severe.

In support of Plaintiff's argument that her mental limitations were severe, she avers that certain opinion evidence was not considered.   For instance, she proffers that the ALJ did not assess Dr Rodríguez' opinion that she had memory problems.   Plaintiff also posits that Dr. Rodríguez's diagnosis of "major depressive disorder, single episode, severe, without psychotic features", is also "a form of opinion."   However, she cites no caselaw for this proposition.

As an initial matter, the Court must mention that it has been well established that an ALJ need not mention every piece of evidence in an administrative record.   Rodríguez v. Sec'y of HHS, 1990 WL 152336, at *1 (1st Cir. Sept. 11, 1990) (unpublished).   ALJ's are charged with reviewing the evidentiary record, weighing the persuasive value of the various elements, and reaching reasonable determinations based upon substantial underlying evidence using the framework of the five-step process.   See Seavey, 276 F.3d at 5.   Not every single piece of evidence must be mentioned by the ALJ in her analysis.

As correctly argued by the Commissioner, Dr. Rodríguez did not provide an opinion statement because the only evidence in the record are his treatment notes.

While Plaintiff argues these notes of the sessions are evidence of his "opinion"[7], these are merely notes of his findings during the visits Plaintiff made to his office and do not constitute an opinion pursuant to Social Security Regulations.   On the contrary, opinions are statements about what a claimant can still do despite his or her existing impairments and are supported by function by function assessment. See 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6).   A diagnosis alone is simply a snapshot in time of a Plaintiff's condition on that day, and by itself, it does not help an ALJ understand or reach any conclusions about a Plaintiff's ultimate capabilities and limitations.   Furthermore, and as previously stated, a review of those notes reflects only mild deficits in mental functioning.   Plaintiff was sad during these sessions, yet was consistently found cooperative, coherent, logical, oriented in three spheres, and with good judgment and insight.   (Tr. pp. 692 and 702-703).

In the same vein, Plaintiff argues that the diagnosis of a "severe major depression, single episode" at the time she was hospitalized in May 2018 is consistent with Dr. Rodríguez' opinion, and that the ALJ failed to consider this "opinion."   Once again, Plaintiff fails to cite any caselaw to stand for the proposition that a diagnosis, standing alone, is an opinion.

The record indicates that Plaintiff was admitted to San Juan Capestrano Hospital because of suicidal ideas due to depression attributed to financial difficulties and sadness because siblings were dealing with cancer.   (Tr. pp. 644-652).   Although Plaintiff's affect was marked as "sad/depressed", upon being examined by Dr. Rodríguez, immediately

---

[7] Docket No. 20, pp. 8-9.

after her discharge she exhibited good memory, insight, and judgment without signs of perceptual disturbances, phobias, delusions, or paranoia.   (Tr. pp. 654-655).   The ALJ noted that the hospitalization was one-time incident of short duration, which was further buttressed by the fact that there are no other hospitalizations in the record.

It is important to note that Plaintiff's discharge from Hospital San Juan Capestrano occurred on May 16, 2018.   She was seen the very next day by Dr. Rodríguez, who stated in the record for that visit that both Plaintiff and her sister reported that Plaintiff was feeling less depressed and felt more motivated.   A few days thereafter, on May 22, 2018, the hearing before the ALJ took place.   And finally, Dr. González' examination occurred just a few weeks afterwards, at the end of June 2018, where he opined that Plaintiff had already returned to normal mental functioning and noted that she had the ability to handle funds. (Tr. p. 689).   Therefore, it seems that the assertion that the hospitalization was a one-time, isolated event is accurate, as there is no further record evidence of any hospitalization or other exacerbating event.

Plaintiff also takes issue with what she avers is conflicting evidence, where she indicates the following: "[i]t is our understanding that both Dr. González Vargas (sic) and Dr. Rodríguez opined that the Plaintiff's mental impairment had more than a minimal effect on her ability to work; or in the alternative, the statement that were given great weight by the ALJ 'apparently struggles on tasks that demands moderate to high levels of memory, and concentration' , is a limitation that the ALJ should have consider as limiting effects in her RFC." (Docket No. 20, p. 12).

As previously stated, however, Dr. Rodríguez did not render an opinion, but rather merely evaluated Plaintiff's condition at every visit, which, besides sadness, reveals unremarkable results.   While it is true that Dr. González stated that Plaintiff had some memory and concentration issues, that statement was not made in a vacuum.   He also found Plaintiff with adequate mental status, with adequate social judgment, attention and concentration levels, and further mentioned that "most intellectual abilities and memory seemed adequate to slightly diminished."   (Tr. p. 689).   Therefore, the fact that Plaintiff suffered from memory and concentration issues, alone, is insufficient to establish disability to such an extent that it would render her incapable of performing any gainful activity, particularly when the remainder of her record reveals no serious or marked mental episodes.

Moreover, it has long been held that the task of resolving factual conflicts and reaching a conclusion from that evidence is one that is reserved strictly for the Commissioner.  See Purdy, 887 F.3d at 13 (resolution of conflicts in the evidence and credibility and the determination of the ultimate question of disability is reserved for Commissioner); and Doucet v. Astrue, No. 12-2123, 2013 WL 12126354, at *1 (1st Cir. May 24, 2013) ("Weighing the evidence was the ALJ's prerogative.").

The ALJ, as the primary factfinder, simply evaluated all the evidence, scant as it was, and reached a conclusion as to that evidence.   The ALJ looked at the largely unremarkable examination notes from Dr. Rodríguez, Dr. González' opinion, and the unrebutted evidence of Plaintiff's mental episode, which was a single incident that did not

last twelve (12) months, and concluded that Plaintiff's mental condition was not severe. This conclusion is plainly buttressed by the record evidence.

In addition, because the ALJ's evaluation of this claim proceeded past step two and considered the effects of all of Plaintiff's impairments through the remainder of the sequential evaluation process, any error at step two in determining the severity of her mental impairment was harmless and had no effect.   See Irizarry-Martínez v. Comm'r of Soc. Sec., Civ. No. 15-2006 (BJM), 2017 WL 87018, at *5 (D.P.R. Jan. 10, 2017) ("[A]ny error the ALJ committed by overlooking Irizarry's shoulder condition in step two was harmless and does not constitute reversible error."); Coe v. Colvin, Civ No. 15-30037 (MGM), 2016 WL 3350995, at *5 (D. Mass. June 15, 2016) (errors committed in step two are harmless when the ALJ considers the impairment through the required evaluation process to determine the RFC); Pérez v. Astrue, Civ. No. 11–3007 (KPN), 2011 WL 6132547, at *4 (D. Mass. Dec. 7, 2011) (if the ALJ considers all the severe and non-severe symptoms when assessing the RFC, any error committed in step two was harmless).

As a final matter, Plaintiff makes one last argument in passing, alleging a hypothetical that has no basis in reality.   She states that "[i]f the ALJ had found that the Plaintiff was limited by her mental condition to perform unskilled jobs; at step 4 the Plaintiff could not have performed (sic) her past relevant job as an Accounts Payable clerk, Auditor, and Accountant, as the mental capacities are SVP 5, SVP 7, and SVP 8, respectively (Tr. 34).   Given that in 2018 the Plaintiff, who had a cervical surgery, was 58 years old, must likely would have grid out (sic) at step 5 of the sequential evaluation. Given the claimant's age, education, work experience and the fact that the ALJ found that

she is unable to perform any past work, a legal determination of disable (sic) could have been reach based on the Grids (Appendix 2 to Subpart P of 20 CFR 404)."

As on previous occasions, the Court finds this argument waived, simply because Plaintiff has not provided a sufficiently developed argument that the Court can analyze. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").    Besides the fact that it stems from an incorrect premise, that the ALJ found Plaintiff was unable to perform her previous jobs, a hypothetical without any developed argumentation is not enough for the Court to consider.[8]

For the reasons above explained, the Court concludes that the ALJ properly evaluated all record and subjective evidence and correctly concluded at step two that Plaintiff's mental impairment was not severe, and said determination was supported by substantial evidence in the record as a whole.

As is well known, although the record may support more than one conclusion, this Court must uphold the Commissioner "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."    Ortíz, 955 F.2d at 769 (quoting Rodríguez, 647 F.2d at 222); see also Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).   At this juncture, however, the issue boils down to whether a reasonable factfinder could have weighed the evidence in the same way as the ALJ did, and whether substantial evidence supports that conclusion.   Evangelista v. Sec'y

---

[8]  While Plaintiff also proffers that a disability determination might have been reached via the grids, she again provides no analysis or support for this two-sentence conclusion.   Specifically, how her physical condition (which Plaintiff failed to contest here anyway) and surgery would have rendered the grids applicable to this particular case.

of Health and Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).   Where the facts permit diverse inferences, the Court will affirm the Commissioner's holding even if it might have reached a different result, as long as that result is supported by substantial evidence. Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

Taken together, the record in this case provides ample support for the ALJ's conclusion at step two that Plaintiff's mental condition was not severe and that it did not prevent her from performing her last occupation as an accounts payable clerk, auditor and/or accountant.   In view of the above, the Court finds no error with the Commissioner's conclusion that Plaintiff was not disabled and finds it is supported by substantial evidence in the record as a whole.

## CONCLUSION

In view of the foregoing, the Commissioner's decision is AFFIRMED.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 10th day of February 2021.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE